**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JOHN LUNA,**

    **Plaintiff,**

**vs.**                                                               **Civil No.  99-918 LH/RLP**

**KENNETH S. APFEL,
Commissioner, Social Security Administration,**

    **Defendant.**

**UNITED STATES MAGISTRATE JUDGE'S
ANALYSIS AND RECOMMENDED DISPOSITION[1]**

1.    This matter comes before the court on the Motion of John Luna ("Plaintiff," herein) to Reverse the decision of the Commissioner of Social Security denying his application for disability insurance benefits.  Plaintiff asks that this matter be remanded to the Commissioner for additional proceedings.

**I.  Statement of Facts**

2.    Plaintiff was born on March 28, 1942. (Tr. 104, 29). He is a high school graduate. (Tr. 130, 30).  He began working for Ford Motor Company as a welder in 1964, and continued that employment until March 20, 1983, when he was laid off following a plant closure. (Tr. 31. 67, 120-124).  At the time he stopped working for Ford, he "was having difficulty doing the work but . . . was doing it." (Tr. 31).  He did not return to work. (Tr. 130).  He obtained vocational training in refrigeration, welding, pneumatics and electricity in 1985. (Tr. 30).  It is undisputed that Plaintiff's

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

eligibility for benefits under Title II of the Social Security Act expired on December 31, 1988. In order to qualify for disability benefits, Plaintiff had the burden of establishing that he was disabled as of that date. **Potter v. Secretary of Health & Human Services**, 905 F.2d 1346, 1347 (10th Cir. 1990).

3. Plaintiff applied for benefits on February 23, 1994, alleging an inability to work since March 20, 1983, because of obesity, arthritic joint pain, heel and knee pain, hypertension, shortness of breath with activity, diabetes, and dizziness. (Tr. 104, 126). In his testimony, he also complained of constant headache. (Tr. 40).

4. <u>Obesity</u>: The medical record clearly establishes that Plaintiff has consistently weighed between 300 and 350+ pounds[2], and that he maintained this weight both before and after his alleged date of onset of disability. (See, e.g., Tr. 285, 279, 272, 270, 259, 249, 251, 242, 228, 223, 191, 183, 178, 174, 167, 208, 340, 337). The record also clearly reflects persistent instructions from his treating physician to lose weight, and repeated referrals to Weight Watchers® or Overeaters Anonymous. (Tr. 279, 277, 276, 275, 274-5, 271, 270, 259, 246, 243, 242, 232, 229, 227, 226, 223, 222). In 1985 and 1986 his treating physician commented that "Pt. is not compliant at all," "Pt. refuses to go to WW," "Pt. warned about need to lose weight, has not been compliant," and "pt does not wish to lose wt." (Tr. 242, 231, 227, 222). Plaintiff denied that he was ever referred to Weight Watchers®, and stated that pain prevented him attending weight loss programs. (Tr. 80, 94-95).

5. <u>Pain</u>: Plaintiff testified that from 1983 or 1984, he suffered from constant headache, low back pain, heel and knee pain. (Tr. 39-40, 86-87).

    a. <u>Heel/Foot</u>. There is no medical record of any complaint of heel pain until December

---

[2]Plaintiff is 6'4" tall. (Tr. 285).

10, 1992, almost four years after Plaintiff's eligibility for disability benefits expired. (Tr. 168). Plaintiff received medication for gout from 1980-1989. (Tr. 272, 257, 245, 190). However, on September 7, 1989, he requested that he be taken off this medication "since (he had) no gout attacks for years . . ." (Tr. 187). Plaintiff also developed diabetic neuropathy in his left foot, which caused pain and tingling in his toes. However, this condition did not evolve until after Plaintiff was last insured for benefits. (Tr. 167-168, 171, 174, 178).

b.  <u>Knee</u>:  Plaintiff had an episode of knee pain in February 1984, for which he received Dolobid, a nonsteroidal anti-inflammatory. (Tr. 251). There is no further recorded complaint of knee pain until September 1994. (Tr. 204-206).

c.  <u>Headache</u>:  Plaintiff testified that he had suffered from constant headache since 1984. (Tr. 40). Plaintiff did complain of headache twice in 1978. (Tr. 283-5). There is no recorded further complaint of headache from the alleged date of an onset of disability through the date Plaintiffs was last insured for benefits.

d.  <u>Back pain</u>:  Plaintiff testified that back pain prevented him from being able to sit for more than 30 minutes at a time between 1983 and 1988.[3] (Tr. 84-85). When evaluated for a possible return to work in 1987, Plaintiff had no complaints of back pain. (Tr. 310). No complaint or abnormality related to Plaintiff's back was recorded in a physical examination performed on January 9, 1989. (Tr. 194-196). There is no recorded complaint of back pain in the medical record until April 16, 1992, when Plaintiff suffered a mid back strain and was advised to rest, avoid heavy lifting, use a heating pad and given a prescription for Naprosyn.

---

[3] Of note, Plaintiff testified that in 1988 he drove his car from California to New Mexico, traveling eight hours a day for two consecutive days. (Tr. 94).

(Tr. 176).

5.      Hypertension: Plaintiff has been treated for hypertension since at least 1978. (See, e.g., Tr. 282).  His blood pressure was generally at acceptable levels except for those occasions when he missed taking blood pressure medications.  (Compare, e.g., Tr.  189, 280, 279, 271, 259, 310, with Tr. 188, 190, 249).  Plaintiff testified, however, that his hypertension caused him to be dizzy and irritable. (Tr. 35).

6.      Shortness of breath with activity:  Plaintiff testified that during his last two years of work he spent four hours each day standing/walking and four hours each day sitting. (Tr. 45-46).  He never missed any work prior to plant closure. (Tr. 33)  At a physical examination on  May 29, 1987, Plaintiff complained of shortness of breath when walking less than one block. (Tr. 310).  The physician evaluating him concluded that he had shortness of breath on exertion. (Id.).

7.      Diabetes: Plaintiff has been a diabetic since the early 1980's, and an insulin dependent diabetic since 1992. (Tr. 35, 171).  He testified that during 1983 through and after 1988, diabetes made him dizzy and forgetful. (Tr. 35).

8.      Dizziness:    Plaintiff complained of dizziness on three occasions from 1978 to 1997.  On March 27, 1978, five years before his alleged onset date, he complained of dizziness and headache. He was advised to rest for the remainder of the day (Tr. 285-4) and thereafter missed no work. (Tr. 33). On February 26, 1984, Plaintiff complained of dizziness while taking various medications for a cold and persistent broncho spasm. (Tr. 244).  The dizziness was thought to be possibly related to medication. (Id.). On January 30, 1997, Plaintiff complained of vertigo of recent onset.  His treating physician diagnosed mild positional vertigo, resolving. (Tr. 334).

9.      In describing his functional limitations, Plaintiff  testified that from 1983 to1988, he had to

4

sit down after walking for one-half block because of shortness of breath, foot pain and dizziness, and that his condition had worsened since then. (Tr. 36-37). During the relevant time period he had no activities other than watching television and limited driving. (Tr. 38, 78, 85). He stated that his pain complaints affected his ability to sleep at night, and that as a result, he had to sleep for several hours during the day. (Tr. 40, 86).

10.    Plaintiff's application for disability benefits was denied throughout the various levels of administrative review and by an Administrative Law Judge ("ALJ," herein) following hearing. (Tr. 107-108; 112; 331-319). The matter was taken before the Appeals Council, which remanded Plaintiff's application to the ALJ with instruction to: (1) obtain supplemental evidence from a medical expert regarding the nature and severity of Plaintiff's impairments in light evidence submitted to the ALJ but not provided to the expert; (2) give further consideration to Plaintiff's residual functional capacity ("RFC," herein), providing appropriate rationale and specific references to evidence of record, and (3) if warranted, obtain evidence from a vocational expert. (Tr. 323-325). The second administrative hearing was conducted on April 14, 1997. (Tr. 59-102). Following this hearing the ALJ provided additional medical evidence to the medical expert, Dr. Edwin Cruz, and propounded interrogatories to him. (Tr. 352-355). Plaintiff was allowed to object to the interrogatories and to submit additional questions to the doctor (Tr. 349, 356-357), but apparently did not do so. The doctor's answers to the interrogatories were made part of the administrative record. (Tr. 354-355). Dr. Cruz stated:

> Upon reviewing the records pertaining to the period March 20, 1983 through Dec. 31, 1988 I cannot see any information which would limit Mr. Luna's ability to perform prolonged sitting. However because of his obesity and dyspnea on exertion, he would not be able to perform any heavy labor or exertion. His walking would be limited by the above findings and complaints. In reconsideration no information is the

records indicate (sic) any limitation as to prolonged sitting or sedentary type work.

(Tr. 355).

11.     In a decision dated June 25, 1997, the ALJ found as of the date he was last insured, Plaintiff retained the RFC for sedentary work, despite his impairments.  She then applied the Medical-Vocational Guidelines ("grids," herein), and determined that Plaintiff was not disabled.  (Tr. 14-19). The Appeals Council denied Plaintiff's request for review of this decision on July 14, 1999. (Tr. 6-7).

## II.  Standard of review

12.     Federal courts are authorized to review whether the Commissioner's decision is supported by substantial evidence and based on the correct legal standards.  42 U.S.C. §405(g).  "Substantial evidence" must be more than a "mere scintilla" of evidence but may be less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 92 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

13.     Accordingly, this court shall examine the entire record, including whatever fairly detracts from the weight of the Commissioner's decision, in order to determine if the substantiality of the evidence test has been met and correct legal principles applied.  **Casias v. Secretary of Health & Human Serv.**, 933 F.2d 799, 800-801 (10th Cir. 1991).  However, this court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  **Id**. at 800.

## III.  Discussion

### The ALJ Did Not Err When Assessing Plaintiff Credibility.

14.     Plaintiff contends that the ALJ relied on improper criteria for rejecting his credibility.  The ALJ discounted Plaintiff's credibility for the following stated reasons:

- Plaintiff obtained vocational retraining for jobs he was exertionally unable to perform. He did not allege that he attempted retraining in light or sedentary jobs, and that he was unable to perform those jobs. (Tr. 15).

- Plaintiff did not lose weight despite the advice from his treating doctors to do so, and admitted that he was not compliant with weight loss programs because they caused pain. (Tr. 16).

- Plaintiff did not indicate any attempt to reduce calorie intake or attempt low exertion exercises. (Tr. 16).

- The fact that Plaintiff did not request or take pain medications is inconsistent with the degree of pain and functional limitations he alleged (e.g., inability to engage in any physical activity, sleep disruption due to pain, the need to sleep during the day). (Tr. 16).

- The fact that Plaintiff did not make any attempt to reduce his weight is inconsistent with the degree of pain and functional limitations he alleged. (Tr. 16).

- Plaintiff's testimony that he was unable to sit for prolonged periods during the period he was last insured for benefits is not supported by the reports of any treating physician. (Tr. 16).

- The only functional limitation any physician placed on Plaintiff during the relevant period was that he not perform his prior heavy work[4]. (Tr. 16).

15. The determination of a claimant's credibility is the provence of the ALJ. **Musgrave v. Sullivan**, 966 F.2d 1371, 1376 (10th Cir. 1992). If a claimant's testimony regarding disabling pain or functional limitation is rejected by the ALJ, he must articulate specific reasons for questioning that testimony. **See Kepler v. Chater**, 68 F.3d 387, 391 (10th Cir. 1995). As stated in **Qualls v. Apfel**, 206 F.3d 1368, 1372 (10th Cir. 2000): "**(Kepler)** does not require a formalistic factor-by-factor

---

[4] The ALJ erred in describing Plaintiff's prior work as "heavy." The vocational expert who testified at the second administrative hearing stated that his prior work was medium as performed in the general economy, and light to medium as he performed it. (Tr. 96-97). I find that this error is harmless for two reasons. First, as late as April 1992, Plaintiff's treating physician only restricted him from performing "heavy" lifting, after he had suffered back strain. (Tr. 176). Second, Dr. Cruz testimony is substantial evidence of Plaintiff's continued ability to perform work at the sedentary level.

recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimants credibility, the dictates of **Kepler** are satisfied."

16.     Plaintiff argues, however, that the ALJ's focus on his failure to lose weight is improper in and of itself, and taints the entire credibility determination. Substantial evidence supports the ALJ's credibility determination, even if I were to exclude consideration the ALJ's reference to Plaintiff's failure to lose weight. Accordingly, I find that the ALJ did not err in her evaluation of Plaintiff's credibility.

### The ALJ Did Not Err in Her Assessment of Plaintiff's Residual Functional Capacity

17.     Plaintiff contends that the ALJ erred in her assessment of Plaintiff's residual functional capacity by failing to give proper consideration of his nonexertional impairments of obesity, dizziness and shortness of breath.

18.     As a factual matter, Plaintiff's shortness of breath was an exertional impairment (occurring after walking less than one block), not a nonexertional impairment. (Tr. 36, 310). There is no substantial evidence that he suffered from dizziness during 1983-1988, other than one instance attributed to medication. (Tr. 244). When Plaintiff next complained of dizziness in 1997, nine years after his insured status lapsed, he stated it was of recent origin. (Tr. 334). The medical expert took Plaintiff's obesity into account when he assessed Plaintiff's residual functional capacity. (Tr. 355).

19.     The ALJ found that Plaintiff had the residual functional capacity for sedentary work as of the date he was last insured for benefits. (Tr. 16-17). Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day. **Soc. Sec. Rul**. 83-10; 20 C.F.R. § 416.967(a). As pointed out by the ALJ, no physician who evaluated Plaintiff from 1983 through 1988 indicated that Plaintiff had any difficulty with

prolonged sitting or with lifting up to 10 pounds throughout an 8-hour work day. The ALJ relied upon this fact, in addition to the medical expert's evaluation, in determining Plaintiff's residual functional capacity.

20. Accordingly, I find that the ALJ applied proper legal standard in assessing Plaintiff's residual functional capacity as of the date he was last insured, and that her determination is supported by substantial evidence.

21. Finally, Plaintiff contends that the ALJ should have obtained a consultative examination in order to properly assess his residual functional capacity, rather than relying on the testimony of a non-examining physician. I find that a consultative evaluation of Plaintiff at a time so remote from the date he was last insured for benefits would provide no useful information upon which the ALJ could base a decision.

### IV. Recommendation

22. For these reasons, I recommend that Plaintiff's Motion to Reverse or Remand be denied and that the decision of the Commissioner, denying Plaintiff's Application Disability Income benefits be affirmed.

_____
RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE